* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Plaintiff was employed by Ezzell Trucking from June 25, 2001 to November 11, 2003.
2. During the period of Plaintiff's employment, the Parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. For purposes of this claim, AmCORP Insurance Company provided workers' compensation insurance coverage.
4. Plaintiff's compensation rate is equal to the maximum compensation rate for the calendar year 2003.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was thirty-seven years old, having a date of birth as June 8, 1967. Plaintiff completed high school and later obtained an Associates Degree in Business Management from Central Piedmont Community College.
2. In early 2001, Plaintiff contacted Ezzell Trucking to inquire whether they had a position for him. Plaintiff accepted a position as Terminal Operations Manager with Ezzell Trucking in June 2001. Prior to being employed with Ezzell Trucking, Plaintiff was employed by D.M. Bowman for twelve years, as a load coordinator and later Regional Sales Manager.
3. Prior to accepting the position of Terminal Operations Manager with Ezzell Trucking, Plaintiff was provided with a job description of the position. The duties of an operations manager are generic throughout the trucking industry. Driver support is the biggest part of the operations managers' duties. Plaintiff advised drivers that it was their responsibility not to drive if they were too tired or were over the hours allowed by the Department of Transportation (DOT) regulations.
4. Al Ganey was the Vice President of Operations from 2001 through 2003 for Defendant-Employer. Mr. Ganey was Plaintiff's direct supervisor and monitored Plaintiff's work through periodic visits and daily telephone conversations.
5. Ezzell Trucking reorganized the structure of its company in late 2002 or early 2003, due to economic concerns. At that time, the division Plaintiff operated was operating at a loss.
6. In late 2002 to early 2003, Ezzell Trucking downsized the division over which Plaintiff had charge and converted all freight to short haul operations. This conversion to a completely short haul operation resulted in the company having to cease hauling loads for approximately seventy existing customers, including new customers that Plaintiff had secured while in his position at Ezzell Trucking.
7. Plaintiff was upset that the company was no longer providing services to customers that he had brought into the company. Mr. Ganey and Plaintiff continued to meet regularly after restructuring. Plaintiff never expressed to Mr. Ganey any concerns that the restructuring placed additional duties upon him that he was not able to perform.
8. Throughout Plaintiff's employment with Ezzell Trucking, he was outstanding in sales, but Plaintiff struggled with driver relationships. Drivers complained to the Human Resources Department or the dispatcher, Judy Payne, that Plaintiff was not accessible. Mr. Ganey regularly discussed with Plaintiff the complaints of drivers. Mr. Ganey reminded Plaintiff that drivers were the most important part of their business and that it was crucial to have a good working relationship with the drivers. When Mr. Ganey discussed with Plaintiff the complaints that drivers had with him, Plaintiff would become angry and sometimes walk out of the meeting.
9. Plaintiff testified that he developed a high level of stress and adjustment disorder because Ezzell Trucking pressured him into performing illegal acts and because Ezzell Trucking disregarded driver safety regulations. He testified that Ezzell Trucking forced him to punish drivers who would not drive more then their allowable hours and that he was forced to fire a driver who refused a load that would have placed him over the allowable hourly limit.
10. Ezzell Trucking's company policy does not allow drivers to drive over the number of hours allowed by DOT. At no time during his employment did Plaintiff ever raise concerns with Mr. Ganey about drivers driving over hours or driving when they were not physically or mentally capable. Plaintiff testified that much of his stress was caused by being forced to discipline drivers for not accepting trips when they were physically tired, or when the trip would cause them to drive over the hours allowed by DOT regulations.
11. No evidence was presented establishing that any driver for Ezzell Trucking was disciplined for refusing a load because they were not physically or mentally able to take the load, or because they were over hours.
12. Mr. Ganey never received any complaint from any individual that drivers were being pressured to take loads by dispatchers when drivers were over hours.
13. Judy Payne was a driver supervisor during the time Plaintiff was employed with Ezzell Trucking. Plaintiff never complained to Ms. Payne about drivers driving over hours or driving when they were not physically able to perform the job.
14. In the spring and summer of 2003, in addition to his full time job with Ezzell Trucking, Plaintiff worked and earned wages as an actor and from employment in a pest control business.
15. Jack Burnett, who has been a truck driver for Ezzell Trucking for fourteen years, testified at hearing. In the entire course of Mr. Burnett's employment with Ezzell Trucking, he was never required to take a load when he was over hours and he was never required to take a load when he felt that he was unable physically or mentally to take the load.
16. Randy Lynch has been employed for Ezzell Trucking for four years. Mr. Lynch has never been required to carry a load when he was over hours. Mr. Lynch has never been asked to carry a load when he told the dispatcher he was physically or mentally unable to carry the load.
17. There was no evidence presented of any instance where an employee was disciplined or terminated for refusing to take a load when that employee did not have the hours to legally do so or did not feel physically or mentally caple of taking the load. Willy Jones, another truck driver, testified that he has refused a load that would have placed him over his allowable driving hours, but he was not disciplined. Drivers were disciplined, however, for taking loads that caused or would have caused them to drive "over hours."
18. There is no credible evidence that Plaintiff was ever required to discipline drivers who refused to perform illegal activities.
19. Plaintiff presented to Dr. Charles Ellithorpe on September 30, 2003, with complaints of stress due to trouble at work. Plaintiff appeared anxious, but did not discuss any particular event or stress placed upon him at work. Dr. Ellithorpe performed a physical examination, which was essentially normal. Plaintiff wanted to see a therapist and was reluctant to try medication. Dr. Ellithorpe excused Plaintiff from work until he had an opportunity to deal with his anxiety through counseling. Plaintiff continued to see Dr. Ellithrope for anxiety, for which he was prescribed medication, through November 6, 2003. Plaintiff never related his anxiety to his job duties at work.
20. Dr. Ellithorpe's determination was that Plaintiff was "brittle." In July 1996, Dr. Ellithorpe treated Plaintiff for a similar condition and also described Plaintiff's condition as "brittle," when Plaintiff was having marital difficulties. Plaintiff has a history of problems with anxiety and depression.
21. Plaintiff presented to Dr. Robert Anderson, a psychologist, in October 2003. The deposition of Dr. Anderson was taken on January 11, 2005. Plaintiff complained of stress from his job, which he described as being over stimulated, too revved up at work, irritable and lashing out at people. Plaintiff related some of his stress to his role at work where he had to discipline employees, but did not have the opportunity to give out incentives. Dr. Anderson assessed Plaintiff as having multiple stresses and role complications at work. Plaintiff was having difficulty relaxing at work and managing his anger. Dr. Anderson testified that Plaintiff is a Type A personality. A Type A personality generally has considerable time pressure issues and proclivity for difficulty with anger.
22. Dr. Anderson opined that Plaintiff's adjustment disorder with mixed anxiety and depressed mood was caused by stress placed on Plaintiff by his job with Ezzell Trucking, assuming that the information provided to him in Plaintiff's hypothetical question was factual. Based on the greater weight of the evidence, the hypothetical was not factual in a number of respects. The evidence does not establish that Plaintiff was required to perform illegal acts or discipline drivers for refusing to engage in illegal activity such as driving over the allowable number of hours or driving at times when the driver was not mentally or physically alert enough to make the trip safely. Although Dr. Anderson also testified that Plaintiff's job placed him at a higher risk of contracting said condition than members of the general public not so employed, the underlying basis for this opinion is speculative, at best. Therefore, the opinions of Dr. Anderson on causation and increased risk are given no weight.
23. Plaintiff has not proven by the greater weight of the competent, credible evidence that his supervisors required him to do anything that was illegal or that his job duties caused him to develop depression or adjustment disorder with mixed anxiety.
24. Plaintiff was terminated from his position because of company financial problems and Ezzell Trucking determined that it was more feasible to eliminate Plaintiff's position.
25. The position of Operations Manager has not been reinstated at the company.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIS OF LAW
Plaintiff failed to prove that his job with Ezzell Trucking caused, significantly contributed to the development of, or placed him at an increased risk of developing depression or an adjustment disorder with mixed anxiety than the public in general. Plaintiff has failed to prove by the greater weight of the evidence that he contracted a compensable occupational disease. N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits for an occupational disease is hereby DENIED.
2. Each side shall bear its own costs, except the Defendants shall pay an expert witness fee of $275.00 to Dr. Charles Ellithorpe, if not paid by prior order.
This the __ day of March 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ LAURA K. MAVRETIC COMMISSIONER
 S/_________________ DIANNE C. SELLERS COMMISSIONER